# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ALIBEG CAUSEVIC,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 17-CV-2006-LRR<br><br>**REPORT AND RECOMMENDATION** |

    Claimant, Alibeg Causevic, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 (the Act), and for supplemental security income under Title XVI, 42 U.S.C. §§ 1381-83f of the Act. Claimant contends that the Administrative Law Judge erred in determining that he was not disabled.

    For the reasons that follow, I respectfully recommend that the District Court **affirm** the Commissioner's decision.

## I.     BACKGROUND

    I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 12). At the time of the hearing before the ALJ, claimant was 53 years old. (*Id.*, at 3). Claimant was born in Bosnia, spoke no English, required an interpreter to communicate with those who spoke English (including during the hearing before the ALJ), and could not read, write, add, or subtract. (*Id.*). Claimant has an eighth grade education. (*Id.*, at 7). Claimant has past relevant work as

a meat preparer and is capable of performing that work. (AR 58).[1] Claimant does not dispute this finding.

On August 30, 2013, claimant filed an application for disability and disability insurance benefits, as well as an application for supplemental security income alleging a disability onset date of February 9, 2012, in both applications. (AR 46) The Social Security Administration denied claimant's applications initially and on reconsideration. (*Id.*). On June 2, 2015, ALJ Tom Andrews held a hearing and denied claimant's applications for benefits on December 10, 2015. (AR 46-59). On December 12, 2016, the Appeals Council denied claimant's request for review. (AR 1-4).

On February 28, 2017, claimant filed his complaint in this Court. (Doc. 3). On August 8, 2017, claimant filed his brief. (Doc. 15). On September 11, 2017, the Commissioner filed her brief. (Doc. 16). On September 19, 2017, claimant filed his reply brief. (Doc. 18). Also on September 19, 2017, the Court deemed this case fully submitted and ready for decision, and the Honorable Linda R. Reade, United States District Judge, referred this case to the undersigned United States Magistrate Judge for a report and recommendation.

## II. *DISABILITY DETERMINATIONS AND BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in

---

[1] "AR" refers to the administrative record below.

significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. (*Id.* § 416.920(a)(4)(ii)). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. (*Id.*). *See also* 20 C.F.R. § 404.1521.

3

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his [ ] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can

make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since February 9, 2012, the alleged onset date of claimant's disability. (AR 48).

At Step Two, the ALJ found that claimant had the severe impairments of "anxiety disorder; posttraumatic stress disorder (PTSD)." (*Id.*). The ALJ found that, although claimant alleged other severe impairments, these other alleged impairments had no "more than a minimal effect on the claimant's ability to perform basic work activities," and thus did not fall within the definition of a severe impairment. (AR 49). Accordingly, the ALJ determined that "any condition not otherwise defined [in the ALJ's decision] as 'severe' is considered a non-severe impairment." (*Id.*). This determination included the ALJ's rejection of claimant's intelligence as a severe impairment. (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations. (AR 50).

At Step Four, the ALJ found claimant had:

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to work on a sustained basis without exertional limits, but at an unskilled level where he need only understand, remember, and carry out routine, and repetitive work tasks and not more than at a regular pace.

(AR 52). Also at Step Four, the ALJ determined claimant was able to perform past relevant work as a meat laborer and was, therefore, not disabled. (AR 58). As a result, the ALJ did not reach Step Five.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

6

Case 6:17-cv-02006-LRR-CJW   Document 19   Filed 09/27/17   Page 6 of 13

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant argues that the ALJ's Step Two determination was flawed because the ALJ disregarded claimant's decreased intelligence and, therefore, failed to develop the record with respect to Listing 12.05C's applicability to claimant. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C). Claimant does not challenge the ALJ's decision on any other grounds.[2]

---

[2] Note that claimant does not challenge the ALJ's findings with respect to claimant's residual functional capacity or claimant's ability to perform past relevant work. Instead, claimant's argument is that the ALJ's analysis should not have proceeded to these steps because the ALJ should have assessed claimant with a presumptively disabling impairment or a combination of

The crux of claimant's argument is that, based on the medical assessments showing claimant "had decreased intellectual functioning," the ALJ had a duty to investigate claimant's intellectual capacity and analyze that capacity within the context of Listing 12.05C. (Doc. 14, at 4-11). In support thereof, claimant details the psychological testing conducted by Dr. Patrick O'Conner, Ph.D., in July 2014, in which claimant's personal friend served as a translator because of claimant's limited ability to communicate with English-only speakers. (*Id.*, at 4; AR 923-24). This assessment revealed that claimant's developmental level was equivalent to that of a child between the ages of 5½ and 6 years old. (AR 923-24). Claimant was further unable to accurately state the name of the current president and the date. (AR 924). However, claimant fails to recognize that Dr. O'Conner only administered five subtests from the Wechsler Memory Scale as opposed to the full assessment. (AR 923). Because a complete assessment was not administered, Dr. O'Conner intended the assessment to gain only "a basic idea about [claimant's] functioning." (AR 1161).[3] Even so, based on these test results, claimant suggests that the ALJ had a duty to obtain additional intelligence quotient (IQ) testing before the ALJ could properly determine that claimant did not suffer from "either borderline intellectual functioning or intellectual disability as a severe impairment" as illustrated in Listing 12.05C. (Doc. 15, at 7).

Listing 12.05 provides that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports

---

impairments that met or equaled a presumptively disabling impairment. Claimant does not argue, in the alternative, the residual functional capacity findings or his ability to perform past relevant work. Because claimant does not make these arguments, they will not be addressed *sua sponte*.

[3] Although Dr. O'Conner's letter describing his intent regarding the assessment is dated after the date of the ALJ's decision, the ALJ properly identified the assessment as "not an entire assessment." (AR 56).

onset of the impairment before age 22," and intellectual disability can be shown by "[a] valid verbal, performance, or full scale IQ scale of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Claimant now argues that Dr. O'Conner's testing established the requisite intellectual disability and that his eighth grade education and inability to learn English show that this impairment began prior to age 22. (Doc. 15). In the alternative, plaintiff provides that even if Dr. O'Conner's assessment did not establish a Listing 12.05C impairment, the testing was suggestive enough of an intellectual disability that the ALJ should have ordered additional IQ testing. Because the ALJ determined that claimant suffered from two other severe impairments, the final prong requiring an additional impairment is not at issue. (AR 48).

As an initial matter, it must be noted that Dr. O'Conner's assessment provided no indication of claimant's IQ, nor does it appear that Dr. O'Conner intended to assess claimant's IQ. Dr. O'Conner explained in a letter to claimant's counsel that "the assessment was designed to gain a basic idea about [claimant's] functioning and to use whatever resources that were available." (AR 1161). There is no indication in either Dr. O'Conner's notes or letter that the assessment was intended as an IQ test. It is difficult to comprehend how an assessment that did not evaluate claimant's IQ could serve as the basis for showing that claimant suffered an intellectual disability based on an IQ between 60 and 70.

The ALJ, after thoroughly discussing Dr. O'Conner's assessment, assigned no weight to Dr. O'Conner's evaluation because there was no validity to using that assessment with a non-English speaker, especially when the testing was conducted through the use of a personal friend as a translator. (AR 57). Furthermore, the ALJ found:

> The extremely low results are wholly out of step with the claimant's work history and his presentation at the hearing, where he readily understood and answered all translated questions. The undersigned finds the results simply strain credibility, as the results were three standard deviations from the norm and are highly suspect to warrant serious consideration.

(*Id.*). After the ALJ issued his decision, Dr. O'Conner provided additional evidence in the form of a letter that buttresses the ALJ's findings. Dr. O'Conner stated, in relevant part:

> The instruments used [in assessing claimant] were developed in the United States and are designed to assess individuals familiar with American Culture. I did not use an instrument which would be considered 'culture fair.' The second concern would be the use of an interpret[e]r and especially if the individual is a friend or relative of the examinee.

(AR 1161). Given Dr. O'Conner's support of the ALJ's own concerns, it is clear that the ALJ was correct to question the assessment results on these grounds. Because the ALJ's analysis of Dr. O'Conner's assessment finds very strong support in the record as a whole, it would be improper for this Court to adopt claimant's suggestion that the ALJ erred in not finding an intellectual disability based on this evidence. *See Kluesner*, 607 F.3d at 536 (where two inconsistent positions may be drawn from the evidence and one of those positions is that of the Commissioner, the Court must affirm).

As a final matter on the issue of Dr. O'Conner's assessment itself, claimant offers several cases intended to support the assertion that the purported IQ testing established an intellectual disability. However, in each of the cited cases, the claimant had actually undergone IQ testing and had received an IQ score. It was on the basis of those IQ scores that the Eighth Circuit Court of Appeals proceeded with its analyses. *See Hesseltine v. Colvin*, 800 F.3d 461, 464-66 (8th Cir. 2015) (where claimant had received IQ scores of 71 and 72, the ALJ erred in not addressing whether claimant's IQ was a severe impairment); *McNamara v. Astrue*, 590 F.3d 607, 608-09 (8th Cir. 2010) (IQ testing

indicated an IQ in the range of 70-74, which was in the borderline intellectual functioning range; however, the court denied benefits on other grounds). In fact, in one such cited case, the Eighth Circuit explicitly stated, "[claimant] does not meet the [IQ score] 12.05C requirement *because the record does not reflect he has ever been administered an IQ test*." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (emphasis added). Likewise, the record in the instant case provides no evidence that claimant has ever been administered an IQ test. Therefore, in the absence of an IQ test, the ALJ had no basis upon which to determine that claimant was intellectually disabled.

The next question, then, is whether Dr. O'Conner's assessment offered a suggestion that claimant suffered an intellectual disability such that the ALJ had a duty to further investigate claimant's IQ to determine whether claimant's low IQ, in conjunction with claimant's other severe impairments, met or equaled a presumptively disabling condition. In *Lott v. Colvin*, the Eighth Circuit admittedly remanded the case for further development of the record, including IQ testing; however, the Eighth Circuit rested this holding on the ALJ's adoption of a physician's mental retardation diagnosis. It was only because the ALJ adopted this diagnosis that the Eighth Circuit found that the ALJ should have further developed the record by ordering an IQ test to determine whether the claimant met Listing 12.05C. 772 F.3d at 551-52.

Dr. O'Conner's assessment in the instant case could arguably lead one to believe that claimant suffered some intellectual disability. However, the ALJ appropriately rejected this assessment for reasons that were later affirmed by Dr. O'Conner himself. (AR 56-57, 1161). Thus, this case is distinguishable from *Lott*, as the ALJ in the instant case did not adopt any finding of intellectual impairment and, thus, did not impose on himself a burden to further investigate whether claimant met Listing 12.05C.

This is not to say that the Court will dismiss any claim of intellectual disability where purported IQ testing was flawed; this would be inconsistent with precedent. *See*

11

*generally, e.g.*, *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (when claimant's IQ score was not measured until age 37, this testing, although long after the developmental period had concluded, could be used to demonstrate an intellectual disability manifesting during the developmental period). Rather, this finding is in recognition that if a claimant wishes to make a claim of intellectual disability, he cannot merely assert intellectual disability based on a partial assessment that was not designed to examine IQ or mental functionality as a whole. Claimant must go further than this and present colorable evidence, such as an IQ test—flawed or otherwise—or a medical diagnosis regarding intellectual functioning, as in *Lott*, before claimant can expect an ALJ to find in his favor. *Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004) (a claimant bears the burden of establishing his disability through step four of the sequential analysis). An ALJ cannot rule on a matter when he is presented with no evidence. In the instant case, claimant failed to present any evidence of intellectual disability that merited weight. Had a more reliable testing method, considering claimant's situation, been employed, perhaps this would have been sufficient. Thus, the ALJ was not in a position where he could find an intellectual disability, nor was he put in a position to question claimant's intellectual capacities such that additional IQ testing was necessary.

Finally, although claimant asserts that his lack of formal schooling beyond eighth grade, his insufficient mathematics and reading skills, and inability to learn English are evidence of the onset of disability prior to age twenty-two, this Court is not in a position to address such a question. There is simply not enough evidence in the record regarding claimant's history for the Court to make a knowledgeable finding regarding claimant's intellectual capabilities before age twenty-two. It is certainly possible that claimant suffered this impairment during the developmental years. *See Maresh*, 438 F.3d at 900 (holding that an ALJ erred in failing to find an impairment arose during a claimant's developmental years when there was evidence the claimant "struggled in special

education classes through the ninth grade, and then dropped out of school[,] . . . had trouble with reading, writing, and math" and had low IQ scores after the developmental period). However, because the ALJ did not reach this point in the analysis and because there is so little evidence in the record regarding this issue, the Court cannot justifiably reach a conclusion one way or the other. This is of minor concern, however, because the ALJ properly determined that claimant does not suffer an intellectual disability; thus, whether a disability manifested itself prior to age twenty-two is a moot point.

Therefore, I respectfully recommend that the District Court **affirm** the ALJ's determination that claimant did not establish a Listing 12.05C impairment.

### VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend that the District Court **affirm** the ALJ's decision.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 27th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa