# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ALIBEG CAUSEVIC,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 17-CV-2006-LRR<br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the court is Plaintiff Alibeg Causevic's Objection (docket no. 20) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 19), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Causevic.

## *II. PROCEDURAL HISTORY*

On February 28, 2017, Causevic filed a Complaint (docket no. 3) seeking judicial review of the Commissioner's final decision denying Causevic's application for Title II disability insurance benefits and Title XVI supplemental security income. On April 28, 2017, the Commissioner filed an Answer (docket no. 8). On August 8, 2017, Causevic filed the Plaintiff's Brief (docket no. 15). On September 11, 2017, the Commissioner filed the Defendant's Brief (docket no. 16). On September 19, 2017, Causevic filed the Reply (docket no. 18). On September 19, 2017, the matter was referred to Judge Williams for issuance of a report and recommendation. On September 27, 2017, Judge Williams issued the Report and Recommendation. On October 11, 2017, Causevic filed the Objection. The Commissioner has not filed a response, and the time for doing so has passed. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

### A. *Review of Final Decision*

When the Commissioner adopts an Administrative Law Judge's ("ALJ") findings and conclusions as its final decision, the final decision is subject to judicial review. *See* 42 U.S.C. § 405(g). The court "will affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). "Substantial evidence is 'less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (alteration omitted) (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)). In determining whether substantial evidence supports the Commissioner's decision, the court "consider[s] the evidence that supports the Commissioner's decision as well as the evidence that detracts from it." *Jones*, 619 F.3d at 968 (quoting *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)). A court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions," the court must affirm the Commissioner's decision. *Anderson*, 696 F.3d at 793.

When reviewing the Commissioner's decision, the court "must judge the propriety of such action solely by the grounds invoked by the agency" and may not affirm the decision based on a post hoc rationale that "it considers to be a more adequate or proper basis." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also, e.g.*, *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (applying *Chenery* analysis in the context of social security benefits); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (same); *Strom v. Astrue*, Civil No. 07-150, 2008 WL 583690, at *27 (D. Minn. Mar. 3, 2008) (same). In other words, "'a reviewing court may not uphold an agency

decision based on reasons not articulated by the agency,' when 'the agency has failed to make a necessary determination of fact or policy' upon which the court's alternative basis is premised." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) (alterations omitted) (quoting *HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998)).

### *B. Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court reviews the unobjected-to portions of the proposed findings or recommendations for "plain error." *See United States v. Rodriguez*, 484 F.3d 1006, 1010-11 (8th Cir. 2007) (noting that, where a party does not file objections to a magistrate's report and recommendation, the party waives the right to de novo review and the court will review the decision for plain error).

3

## IV. ANALYSIS

Causevic's sole objection is that the ALJ failed to obtain a psychological consultative evaluation to determine whether Causevic had an intellectual disability qualifying as or equivalent to the presumptively disabling condition of Listing 12.05C. *See* Objection at 3-9; *see also* 20 C.F.R. pt. 404, sbpt. P, app'x 1, § 12.05C (2015) (stating that intellectual disability can be established by "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function"). Causevic's argument is essentially that, because he provided "limited cognitive testing" that suggested he had decreased intellectual functioning, the ALJ had a duty to order additional testing to fully develop the record. *See* Objection at 3-5. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 9-1 through 9-9 and 10-1 through 10-5), the court overrules the Objection.

The only evidence that Causevic provided in support of his alleged cognitive disability was the opinion of Dr. Patrick O'Conner. This assessment provided no indication of Causevic's IQ and was allegedly "designed to gain a basic idea about [Causevic's] functioning." AR at 1161. Based on his testing, Dr. O'Conner opined that Causevic had visual-motor perception skills equivalent to that of a five-and-a-half to six year old child and that his cognitive functioning "falls below the first percentile." *Id.* at 923-24. The ALJ fully considered Dr. O'Conner's medical opinion, alongside and in light of all other evidence in the record, and concluded that it should be assigned no weight. *See id.* at 49, 57; *see also* 20 C.F.R. § 416.927(c) (describing how the Commissioner evaluates medical opinions). The ALJ noted that, to determine Causevic's cognitive functioning, Dr. O'Conner administered only five subtests of the Wechsler Adult Intelligence Scale III, instead of the complete thirteen-subtest assessment. *See* AR at 57, 923-24. Further, the ALJ noted that this testing was "invalid as the testing utilized is not

designed for non-English speaking test takers," like Causevic, especially where Causevic utilized a personal friend to translate. *Id.* at 49. The ALJ also pointed out that the "extremely low results are wholly out of step with [Causevic's] work history and his presentation at the hearing, where he readily understood and answered all translated questions." *Id.* at 57. Ultimately, the ALJ found that the "test results, showing outcomes more than three standard deviations from the norm, simply strain credulity against the backdrop of the evidence as a whole" and assigned them "no weight." *Id.* at 49, 57.

In the Report and Recommendation, Judge Williams found that the ALJ's decision to assign no weight to Dr. O'Conner's opinion was supported by the record as a whole. *See* Report and Recommendation at 10. Judge Williams also found that "the ALJ had no basis [in the record] upon which to determine that [Causevic] was intellectually disabled." *Id.* at 11. Causevic does not object to this portion of the Report and Recommendation. In fact, "Causevic concedes that this evidence, by itself, is not enough to find [that] he meets Listing 12.05C." Objection at 4. Causevic and Dr. O'Conner both acknowledged the issues with the testing procedures. *See id.*; AR 1161 (letter from Dr. O'Conner stating that the test administered was not "cultur[ally] fair" and that there were concerns about his use of Causevic's friend as an interpreter). Causevic has thus waived de novo review of this portion of the Report and Recommendation and, upon review, the court finds no ground to reject or modify Judge Williams's findings and conclusions.

Despite capitulating to the problematic nature of Dr. O'Conner's opinion, Causevic "contends . . . that this evidence is sufficient to trigger the ALJ's independent duty to fully and fairly develop the record." Objection at 4. After a de novo review, the court disagrees. Causevic is correct that "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). Causevic, however, has "the burden of proving his disability" through the first four steps of the traditional five-step analysis. *Id.*

5

at 836; *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (detailing the five-step sequential evaluation process used "to determine if a claimant is disabled"). The court must therefore determine whether Causevic has taken steps sufficient to trigger the independent duty of the ALJ to develop the record.

Courts analyzing an ALJ's duty to develop the record have generally found that the claimant must first put forth some objective evidence suggesting the existence of a severe impairment before the ALJ has any duty to investigate. The Tenth Circuit Court of Appeals, for example, has found that "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). "When the claimaint has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. The Fifth Circuit Court of Appeals has similarly noted that a "consultative evaluation . . . is only required when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Harper v. Barnhart*, 176 F. App'x 562, 566 (5th Cir. 2006) (quotation omitted). Finally, the Seventh Circuit Court of Appeals has stated that, "[p]articularly in counseled cases, the burden is on the claimant to introduce some objective evidence indicating that further development is required." *Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012). The court finds that these cases are persuasive.

The Eighth Circuit cases that Causevic relies upon support the application of this requirement. In these cases, the claimant had presented some credible evidence of a disability that triggered the ALJ's duty to further develop or address the record. *See, e.g.*, *Brown v. Colvin*, 825 F.3d 936, 940-41 (8th Cir. 2016) (remanding, but not requiring the ALJ to order additional testing, after finding that the ALJ failed to explain why he relied on one of two conflicting hearing tests, failed to "accurately describe the medical evidence

in the record" and failed to identify or analyze the relevant listing); *Lott v. Colvin*, 772 F.3d 546, 552 (8th Cir. 2014) (finding that the ALJ should have ordered an IQ test "[g]iven [his] adoption of Dr. Nichols'[s] mild mental retardation diagnosis" and determination that the claimant "suffered from the severe impairment of mild mental retardation"); *see also Snead*, 360 F.3d at 839 (finding that the ALJ had a duty to develop the record after he "accepted as credible the evidence showing that [the claimant] suffered from congestive heart failure" but subsequently rejected the opinion of the treating physician despite a lack of support in the record for that decision).

Upon review, the court finds that the record in this case is devoid of any objective evidence suggesting that Causevic suffered from a severe intellectual disability. The ALJ correctly found that Dr. O'Conner's opinion "simply strain[ed] credulity" and should be assigned no weight. *See* AR at 49. Further, substantial evidence supported the ALJ's finding that Causevic's "past employment history," "presentation at the hearing" and the record as a whole did not support Causevic's alleged intellectual disability. As Judge Williams found, Causevic "failed to present any evidence of intellectual disability that merited weight." Report and Recommendation at 12. Accordingly, Causevic did not meet his "burden . . . to introduce some objective evidence indicating that further development [wa]s required." *Wilcox*, 492 F. App'x at 678; *see also Harper*, 176 F. App'x at 566. The ALJ, thus, had no duty to order any additional testing and the court overrules the Objection.

## *V. CONCLUSION*

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objection (docket no. 20) is **OVERRULED**;

(2) The Report and Recommendation (docket no. 19) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**;

(3) The Complaint (docket no. 3) is **DISMISSED WITH PREJUDICE**;

(4) The Clerk of Court is **DIRECTED** to terminate all pending motions.

**IT IS SO ORDERED.**

**DATED** this 26th day of March, 2018.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA